1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  J.M. MARTINAC SHIPBUILDING
    CORPORATION, a Washington corporation,

11              Plaintiff,                          CASE NO. C06-1544 JCC

12     v.                                           ORDER

13  THE STATE OF WASHINGTON, by and
    through its DEPARTMENT OF
14  TRANSPORTATION; DOUGLAS B.
    MACDONALD, Secretary of Transportation, in
15  his individual capacity; W. MICHAEL
    ANDERSON, Acting Assistant Secretary and
16  Executive Director, Washington State Ferry
    System, in his individual capacity; SAMUEL J.
17  KUNTZ, Chief Financial Officer, Washington
    State Ferry System, in his individual capacity; and
18  LAURENS ZUIDWEG, Director of Vessel
    Engineering, Washington State Ferry System, in
19  his individual capacity,

20              Defendants.

21

22         This matter comes before the Court on Defendants' Motion To Stay Court Proceedings To Allow

23  Completion of State Administrative Review and Appeal Procedures (Dkt. No. 4), Plaintiff's Opposition

24  thereto (Dkt. No. 9), Defendants' Reply (Dkt. No. 11), and Plaintiff's Surreply (Dkt. No. 13).  The

25  Court, having carefully considered all of the papers submitted and determined that oral argument is not

26  ORDER – 1

1  necessary, hereby finds and rules as follows.

2  **I.    BACKGROUND AND FACTS**

3      The Washington State Legislature enacted the Substitute House Bill ("SHB") 1680 in 2001.  It is

4  codified at Washington Revised Code sections 47.20.780, 47.20.785, and 47.60.810 through 47.60.822.

5  The purpose of this legislation was to authorize the procurement of new auto ferries to replace the

6  "obsolete" 1927-era Steel Electric ferries in the Washington State Ferry System fleet.  To achieve this,

7  the bill implemented a "design-build partnership" contracting process consisting of three phases,[1] where a

8  successful bidder would have to pass all three phases to be awarded the contract.

9      In order to begin the process, Defendant Washington State Department of Transportation

10  ("WSDOT") published a Request for Proposals ("RFP") outlining the proposal requirements and thereby

11  launching Phase I in 2003.  Plaintiff J.M. Martinac Shipbuilding Corporation ("Martinac") participated in

12  the initial bidding process in 2003.  The RFP at the time called for proposals for four new ferries with

13  130-auto capacity.  Plaintiff Martinac successfully passed Phase I and moved on to Phase II.  In 2005,

14  WSDOT began to reconsider the capacity of the ferries, and on August 2, 2006, it published Volumes II

15  through V of the RFP, which altered previous RFP requirements.  Specifically, WSDOT changed its

16  request for 130-auto capacity ferries to one for 144-auto capacity ferries and added new ferry design

17  requirements.

18      Volume II of the RFP provided for an administrative protest procedure.  On October 2, 2006,

19  pursuant to this procedure, Plaintiff Martinac submitted an administrative protest to WSDOT regarding

20  the amendments to the RFP.  Martinac protested that WSDOT lacked legislative authority to procure

21  144-auto capacity ferries; that the RFP violated SHB 1680 by mandating designs and relieving the

22

23  _____

24      [1] Phase I consists of evaluation and selection of prequalified proposers.  WASH. REV. CODE §
   47.60.816.  Phase II consists of development of technical proposals in compliance with instructions in the
25  request for proposals.  *Id.* § 47.60.818.  Phase III consists of submission of bids, evaluation of bids, and
   final awarding of the contract.  *Id.* § 47.60.820.

26  ORDER – 2

1   shipbuilder of significant design responsibility; and that the RFP violated SHB 1680's legislative mandate

2   by proposing a hull form that would fail to interface with all Washington State Ferry System Terminal

3   Facilities, specifically Keystone Harbor.  On November 6, 2006, WSDOT denied all of Martinac's claims.

4   Subsequently, Martinac filed an appeal to the Thurston County Superior Court as part of the

5   administrative review and appeal process.

6        While WSDOT was in the process of replying to Martinac's administrative protest, on October

7   26, 2006, Martinac filed a lawsuit against Defendants, alleging federal statutory and supplemental state

8   tort claims in King County Superior Court and requesting damages under 18 U.S.C. § 1964(c) and

9   Washington common law.  Defendants then removed the case to this Court.

10       In its Complaint, Plaintiff Martinac alleges that WSDOT and its high-ranking officials, also named

11   as Defendants, were involved in a pattern of racketeering activity and a conspiracy to commit the same in

12   the ferry procurement process, as actionable under the Racketeer Influenced and Corrupt Organizations

13   Act ("RICO"), 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c) (First and Second Claims for Relief).  As to

14   its state tort claims, Martinac alleges fraud (Third Claim for Relief), conspiracy to commit fraud (Fourth

15   Claim for Relief), intentional and wrongful interference with prospective economic advantage (Fifth

16   Claim for Relief), conspiracy to commit intentional and wrongful interference with prospective economic

17   advantage (Sixth Claim for Relief), defamation (Seventh Claim for Relief), commercial disparagement

18   (Eighth Claim for Relief), and negligence (Ninth Claim for Relief).  (*See* Pl.'s Compl. 34–50 Part V, ¶¶

19   103–171 (Causes of Action).)

20        Defendants now seek a stay of these proceedings.  Defendants' position is that the claims in this

21   lawsuit and the administrative protest appeal currently pending in Thurston County Superior Court are

22   sufficiently similar to warrant a stay of proceedings in this Court to allow completion of the state

23   administrative review and appeal procedures.

24   //

25   //

26   ORDER – 3

## II.     MOTION TO STRIKE

The Court begins by noting that Plaintiff's Surreply raises various objections to Defendants' Reply papers.  The Court has considered each of Plaintiff's objections and finds it unnecessary to rule on them individually, because the Court did not rely on any of the objected-to material in reaching the disposition herein.

## III.    ANALYSIS

Defendants contend that this Court should stay the instant case pending the resolution of ongoing state administrative proceedings by (1) arguing that the doctrine of "primary jurisdiction" encourages the Court to impose a stay, (2) appealing to the Court's discretion to impose a stay, and (3) arguing that Plaintiff has failed to exhaust its administrative remedies.  Because the Court finds that a discretionary stay is justified, it need not reach the other potential grounds for a stay.

A district court has broad discretion to stay proceedings incident to its power to control its own docket.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Thus, "[w]hen and how to stay proceedings is within the sound discretion of the trial court."  *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  However, the proponent of the stay must "make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255.  When considering the stay, the court "must weigh competing interests and maintain an even balance."  *Id.* at 254–55.  Moreover, it may be an abuse of discretion if a case is stayed indefinitely absent a pressing need or the opposing party is not "sufficiently protected against substantial loss or prejudice."  *Id.* at 258.

Defendants contend that denial of a stay would bring them hardship, because they would be required to defend against similar claims both in the appeal from WSDOT's administrative decision and in federal court.  It is true, as Defendants contend, that the claims in WSDOT's administrative appeal and this Court arise from the same ferry procurement process.  While the mere presence of factual similarities in the two sets of proceedings is insufficient to warrant a stay, a demonstration that answering questions currently pending in the administrative appeal process will produce some finding needed to resolve this

ORDER – 4

1   lawsuit could justify a stay.  Therefore, the inquiry here focuses on what *precisely* in this federal RICO

2   and common law tort case can or should be resolved by WSDOT or the state court appeal.

3          The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4)

4   of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or

5   property.'"  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c),

6   1962(c)).  The RICO predicate acts alleged here are federal mail fraud in violation of 18 U.S.C. § 1341

7   and wire fraud in violation of 18 U.S.C. § 1343.  (Pl.'s Compl. 38 ¶ 116.)  Plaintiff also alleges

8   conspiracy to violate RICO, pursuant to 18 U.S.C. § 1962(d).  The common law torts alleged as

9   supplemental claims are fraud, civil conspiracy to commit fraud, intentional and wrongful interference

10  with prospective economic advantage, conspiracy to commit the same, defamation, commercial

11  disparagement, and negligence.  In contrast, the legal issues to be decided by the pending WSDOT

12  protest proceedings all involve determining whether WSDOT exceeded its statutory authority during the

13  design procurement and bidding process.  These are issues of Washington statutory interpretation, which

14  do not bear on RICO claims or state tort claims as a general matter.  These legal distinctions between the

15  claims in this Court and the claims in the state system do not, however, make the administrative protest

16  appeal irrelevant.

17         The critical question is whether the answers that the state system can provide regarding

18  WSDOT's statutory authority can in any way impact the final resolution of the claims at issue here.  The

19  Court concludes that finally resolving the claims here will depend on what happens in the state appeal

20  process.  Specifically, determining the amount and scope of Plaintiff's damages could be impossible

21  without a final determination in the protest appeal.  The damages alleged here relate to (1) effort, time,

22  and money spent on developing the 130-car ferry design, (2) injury to reputation, and (3) not being

23  awarded the contract.  (Pl.'s Compl. 34 ¶¶ 100–02.)  Assuming that such damages are even available, the

24

25

26  ORDER – 5

1  Court finds that at least the first of these general categories, and potentially the third,[2] likely involve

2  numbers that could be impacted by the questions of state law that are being addressed concurrent to these

3  proceedings.

4        By way of example, the Court turns to the first administrative protest appeal issue—whether

5  WSDOT had the authority to change the plan from a 130-car ferry design to a 144-car ferry design.[3]

6  While some determinations required under RICO, such as the intent behind the change, may not depend

7  on the protest appeal, the *impact* of the change in ferry size will remain unclear while the administrative

8  procedure remains ongoing.  For instance, if WSDOT had *no* authority to change the plan, it presumably

9  would reinstate the 130-car ferry plan and Martinac's lost profits and work efforts would be mitigated,

10 because Martinac would be able to return to its 130-car plans and continue along in the bidding process.

11 On the other hand, if WSDOT acted properly under the state statute, the RICO damages to Martinac

12 could be larger, with the amount depending on such factors as the extent to which Martinac could prove

13 causation for expenditures on its apparently useless 130-car design.  Accordingly, the resolution of

14 WSDOT's legal authority is relevant to at least the fifth element of a civil RICO claim—damages.[4]

15

16        [2]  It appears from the motion papers that *no* bidder has yet been awarded the contract.

17        [3]  As noted *supra* Part I, the following questions of state law are at issue on appeal: (1) whether

18 WSDOT had the authority to change the plan from a 130-car ferry design to a 144-car ferry design; (2) whether WSDOT had the authority to usurp design responsibility from its bidders and whether WSDOT

19 improperly forced bidders to bear legal responsibility and risk for WSDOT's design; and (3) whether WSDOT is authorized to pursue a new build program that will not retire the obsolete Steel Electric

20 ferries transiting Keystone Harbor and whether this program violates the legislative mandate.

21        [4]  The question of RICO claim ripeness is not before the Court, nor must the Court reach it, given the justification for a stay of all claims, federal and supplemental, found herein.  Nevertheless, having

22 found that the amount of damages remains uncertain in the instant case, the Court notes that the Second Circuit has held that "'a cause of action does not accrue under RICO until the amount of damages

23 becomes clear and definite.'"  *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)).  This holding is derived

24 from the rule that a RICO Plaintiff "only has standing if, and can only recover *to the extent that*, he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S.P.R.L. v.*

25 *Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (emphasis added).

26 ORDER – 6

1         Having found that the final resolution of damages in the instant case will depend on the outcome

2   of the administrative proceedings, the Court finds that a stay is warranted.  Forcing Defendants to

3   proceed in the instant litigation, when it is already clear that the outcome of the protest appeal will impact

4   the final resolution of this case, would be prejudicial.  Similarly, the potential prejudice to Plaintiff is

5   minimal, particularly where, as here, the Court imposes a stay rather than dismissing or remanding to

6   state court.

7   **IV.   CONCLUSION**

8         For the foregoing reasons, Defendants' motion for a stay is GRANTED.  This matter is hereby

9   STAYED and it is ORDERED that this action shall be removed from this Court's active caseload until

10  further application by the parties or order of this Court.  This Court retains full jurisdiction and this Order

11  shall not prejudice any party in this action.  The parties are ORDERED to file a NOTICE with this Court

12  when the administrative protest appeal has been litigated to its conclusion.

13        SO ORDERED this 6th day of February, 2007.

14

15

16                                    John C. Coughenour

17                             United States District Judge

18

19

20

21

22

23

24

25

26  ORDER – 7